UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ALBERT JAIRAM BALDEO,                          :
                                               :
               Petitioner,              :
                                               :       **OPINION & ORDER**
   -   against -                           :
                                               :       13 Cr. 125 (PAC)
UNITED STATES OF AMERICA,                      :       17 Civ. 1692 (PAC)
                                               :
               Respondent.              :
------------------------------------------------------X

    Petitioner Albert J. Baldeo ("Baldeo"), a former candidate for New York City Council, petitions for a writ of error *coram nobis*, alongside related claims, seeking to vacate several convictions stemming from the Government's investigation and prosecution of his alleged campaign finance misconduct.

    For the reasons set forth below, Baldeo's various petitions and motions are **DENIED**.

## BACKGROUND

    Familiarity with this matter is presumed; the Court therefore provides only a brief summary of the facts and procedural history.

    Baldeo was alleged to have provided cash or money orders to individual "straw donors," who would then contribute to Baldeo's City Council campaign in their own names, allowing Baldeo to fraudulently obtain matching funds from the New York City Campaign Finance Board. *See Baldeo v. United States*, No. 13 CR. 125 (PAC), 2018 WL 1116570, at *1 (S.D.N.Y. Feb. 26, 2018). After he admitted to funneling funds to the straw donors—*not*, he claimed, with the intent of obtaining public matching funds, but rather to avoid being penalized for failure to repay his own personal loan to his campaign committee—Baldeo was acquitted of one count of conspiracy to commit mail and wire fraud and two counts of mail fraud and attempted wire fraud. *Id.* However, in August 2014, a jury found him guilty of one count of conspiracy to obstruct justice and six

1

counts of obstruction of justice for his conduct during the investigation and prosecution concerning his use of straw donors. *Id.* In February 2015, he was sentenced to 18 months' incarceration, followed by two years' supervised release. *Id.* After a number of failed attempts to forestall his sentence, *see id.* at 2, he began serving his term of imprisonment in March 2015, and completed his supervised release in July 2018.[1] (*See* CR-ECF Nos. 153, 161.)[2]

Baldeo has mounted several unsuccessful challenges to his conviction. In October 2014, he moved for a judgment of acquittal pursuant to Federal Rules of Criminal Procedure 29 and 33, which the Court denied in December 2014. *United States v. Baldeo*, No. 13-CR-125 (PAC), 2014 WL 6807833 (S.D.N.Y. Dec. 3, 2014). After the Court denied his subsequent motion for reconsideration, Baldeo appealed to the Second Circuit, who in August 2015 affirmed his conviction and sentence. *See United States v. Baldeo*, No. 13-CR-125 (PAC), 2015 WL 252414 (S.D.N.Y. Jan. 20, 2015), *aff'd*, 615 F. App'x 26 (2d Cir. 2015). Subsequent bids for *en banc* review and certiorari were denied. *See Baldeo*, 2018 WL 1116570, at *3.

The next year, in March 2016, Baldeo filed a petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, which the Court denied in February 2018. *See Baldeo*, 2018 WL 1116570. Baldeo again sought appellate review, and on November 21, 2018, the Second Circuit denied his motion for a certificate of appealability and dismissed his appeal. (CR-ECF No. 182 / CR-ECF No. 30.)

Just under twenty months later, Baldeo filed this *pro se* petition for a writ of error *coram nobis*. On July 10, 2020, he deposited the first of what would eventually become dozens of filings

---

[1] The Bureau of Prisons has confirmed to the Court that Baldeo was credited for good conduct time and released from custody on July 13, 2016, and thereafter completed his supervised release on July 12, 2018.

[2] Citations to Baldeo's underlying criminal docket, 13-CR-125, are denoted as "CR-ECF." Citations to his parallel civil docket, 17-CV-1692, are denoted as "CV-ECF."

2

in support of that petition. (*See* CR-ECF No. 183 / CV-ECF No. 32.) The vast majority of these submissions were filed well after the 10-day deadline the Court imposed in response to Baldeo's request to supplement his initial papers. (*See* 9/14/20 Memo Endorsement, CR-ECF No. 189 / CV-ECF No. 40.)

In these voluminous filings in support of his *coram nobis* petition, Baldeo also asserts related claims, which the Court addresses in turn below.

## DISCUSSION

### I. Baldeo's *Pro Se* Filings

Baldeo, a now-disbarred former attorney, files the instant petitions and motions *pro se*. The Court therefore construes his submissions "liberally," reading them "to raise the strongest arguments that they suggest."[3] *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotations omitted). Nonetheless, the Second Circuit has explained that a party's *pro se* status neither "excuse[s] frivolous or vexatious filings" nor "exempt[s]" that party "from compliance with relevant rules of procedural and substantive law." *Id.*

---

[3] Although a lawyer representing himself does not ordinarily enjoy the "special solicitude" afforded other *pro se* litigants, *see Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), it is "not clear" whether that rule applies to disbarred former attorneys. *See In re Osborne*, No. 13-CV-8211 CS, 2014 WL 2738558, at *2 n.5 (S.D.N.Y. June 17, 2014) (treating former attorney as a *pro se* plaintiff), *aff'd*, 594 F. App'x 34 (2d Cir. 2015). In several summary orders, the Second Circuit has declined to afford any such solicitude to disbarred former attorneys representing themselves. *See United States v. Pierce*, 649 F. App'x 117, 118 n.1 (2d Cir. 2016) (summary order) (citing *Mitchell v. Con Edison*, 531 F. App'x 140, 141 (2d Cir. 2013) (summary order); *In re Truong*, 327 F. App'x 260, 262 (2d Cir. 2009) (summary order). Because these summary orders are non-precedential—and were guided at least in part by additional facts concerning the disbarred attorneys' expertise—"out of an abundance of caution," the Court treats Baldeo as a *pro se* non-attorney for purposes of this Order. *See In re Osborne*, 2014 WL 2738558, at *2 n.5; *see also Tracy*, 623 F.3d at 101 ("[W]e have also recently expressed, albeit in dicta, our concern that the general withdrawal of solicitude may impose unreasonable burdens on *pro se* litigants in some circumstance.").

In this case, Baldeo has unabashedly flouted both the page limits permitted under Rule 3.G of the Court's Individual Practices, as well as the Court's deadlines governing the instant filings. (*See* 9/14/20 Memo Endorsement.) Baldeo's *pro se* status does not excuse him from either constraint. However, "in light of the special solicitude typically accorded to *pro se* litigants," for purposes of this Order *only*, the Court allows Baldeo's violation of the Court's page limitations. *See Saleh v. Pastore*, No. 19-CV-11799 (KPF), 2021 WL 1640449, at *3 n.4 (S.D.N.Y. Apr. 27, 2021) (considering *pro se* arguments submitted in briefing that exceeded page limits set forth in the court's individual practices), *aff'd*, No. 21-1073, 2021 WL 4978574 (2d Cir. Oct. 27, 2021). The Court does *not*, however, excuse Baldeo's disregard for the specific deadlines imposed in response to his own request to supplement his filings—deadlines that Baldeo, a former lawyer presumably familiar with court deadlines, himself references in his memoranda. *See Richardson v. Darden*, No. 07-CV-6594 (BSJ), 2009 WL 414045, at *1 n.2 (S.D.N.Y. Feb. 17, 2009) (holding that a *pro se* litigant is not exempt from "meeting deadlines set by the Court"); *see also Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented."). The Court thus considers only Baldeo's deadline-compliant submissions.[4] Even

---

[4] Filings submitted by Baldeo in compliance with the Court's deadlines include the following:
- (1) "PETITION FOR ERROR CORAM NOBIS, REVERSAL OF DECISION, RULE 60 APPLICATION, ET AL." (CR-ECF No. 183 / CV-ECF No. 32);
- (2) "CORAM NOBIS PETITION RULE 60 RELIEF AMENDED" (CV-ECF No. 35);
- (3) "NOTICE OF MOTION TO COMPEL AND/OR ADVISE THE U.S. ATTORNEY SDNY TO SEEK BONAFIDE WRITTEN CLARIFICATION. . ." (CR-ECF No. 186 / CV-ECF No. 36);
- (4) "PETITION WRIT OF ERROR CORAM NOBIS RULE 60 RELIEF AMENDED(PART 3)" (CV-ECF No. 41);
- (5) "Gentle reminder to rule on pending Motion filed since 8/13/20: Doc. Nos. 36, 37" (CR-ECF No. 190 / CV-ECF No. 42);

4

these alone are legion; by the Court's estimate, they comprise over 300 documents and 2,500 pages of submissions.

## II.     Coram Nobis

"The Supreme Court has instructed that although the writ of *coram nobis* survived the enactment of § 2255, the writ is available only in truly extraordinary circumstances." *United States v. Viertel*, No. 08-CV-7512 (JGK), 2009 WL 22863, at *6 (S.D.N.Y. Jan. 5, 2009) (citing *United States v. Morgan*, 346 U.S. 502, 510–11 (1954)). The writ is "not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (cleaned up). Because the Court must presume the underlying proceedings "were correct," the petitioner bears the burden to "show otherwise." *Morgan*, 346 U.S. at 512.

To obtain *coram nobis* relief, a petitioner must show, *inter alia*, that "sound reasons exist for failure to seek appropriate earlier relief." *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998).[5] Similarly, the writ does not afford petitioners an opportunity to recycle arguments already considered in prior stages of the litigation. *See United States v. Viertel*, No. 01-CR-571-3 (JGK), 2012 WL 1604712, at *2 (S.D.N.Y. May 8, 2012) ("This claim is barred because the petitioner already raised it in his motion for a new trial."), *aff'd*, 505 F. App'x 40 (2d Cir. 2012).

---

- (6) "LETTER addressed to Judge Paul A. Crotty from A. Baldeo dated 9/18/20 re: SUBMITTED IN COMPLIANCE WITH COURT'S RULING IN DOC. 40. . ." (CR-ECF No. 200 / CV-ECF No. 43);
- (7) "REPLY MEMORANDUM OF LAW FOR PETITIONER FOR A WRIT OF ERROR CORAM NOBIS, RULE 60 APPLICATION, RULE 45 NUNC PRO TUNC APPLICATION, AND ALL OTHER CLAIMS" (CR-ECF No. 202 / CV-ECF No. 47).

[5] A *coram nobis* petitioner must also demonstrate "circumstances compelling such action to achieve justice" and that "the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Fleming*, 146 F.3d at 90 (2d Cir. 1998). Because it denies Baldeo's petition on other grounds, the Court need not address these additional requirements.

5

Baldeo's petition fails these threshold requirements. He demonstrates "no reason why, to the extent that his current argument[s] differ[] from arguments that he has already raised, he was unable to make [them] at an earlier stage." *See Viertel*, 2012 WL 1604712, at *3. As a preliminary matter, many of his claims—including those concerning venue, court transcripts, and purported conflicts of interest among trial counsel[6]—are either verbatim, near-verbatim, or substantially identical facsimiles of arguments that have already been considered and rejected. (*See, e.g.*, Amend. Coram Nobis Mem. at 37, 57–58, 74–79, 79–90, 93–95, 99–107, CV-ECF No. 35.)

And to the extent these or other claims are now presented for the first time, Baldeo provides no valid justification for his failure to do so earlier. The Court cannot discern any legitimate excuse for Baldeo's failure to earlier assert, for example, arguments concerning the Court's own jurisdiction, the Government's disclosure obligations, purportedly prejudicial comments made by the Court and the Government, spillover prejudice, jury instructions, substantive defenses, transcription issues, constructive amendment of the indictment, the propriety and adequacy of testimony, jury impartiality, evidentiary rulings, or the Court's pre-judiciary employment history. (*See id.* at 40, 44–51, 68–71, 90–91, 92, 95–97, 109–32.)

To the extent a few of Baldeo's grounds for relief could even *conceivably* be construed as reliant upon recent developments—and therefore unripe until now—they nonetheless fall flat on their merits. Baldeo's scattershot sermonizing about the Mueller Investigation, various high-ranking Department of Justice officials, and prosecutorial discretion sputters short of any lucid grounds for relief—even when viewed through the forgiving lens the now-disbarred Baldeo's *pro*

---

[6] The Court cannot, and has not, included herein individualized responses to every argument Baldeo has gestured at across his thousands of pages of filings. To the extent Baldeo asserts additional arguments not addressed in this Opinion, the Court has reviewed them, considered them, and found them to be meritless.

*se* status affords him. (*See e.g.*, *id.* at 23, 37–39, 51–68; *see generally* Mot. to Compel, CR-ECF No. 186 / CV-ECF No. 36.) Worse still, Baldeo's policy-driven pleas for "this Panel" to make substantive changes to controlling Second Circuit precedent, and to otherwise exceed its jurisdiction as a district court, appear as though they may have been copied and pasted from past appellate briefing. (*See e.g.*, *id.* at 91–92, 107–09, 132–33.)

Finally, Baldeo's attempt to seek refuge under the Supreme Court's 2018 holding in *Marinello v. United States*, 138 S. Ct. 1101 (2018) is also without merit. To start, *Marinello* endeavored to interpret a phrase native to an unrelated statutory scheme and administrative enforcement context. *See id.* at 1104 ("In our view, 'due administration of [the Tax Code]' does not cover routine administrative procedures that are near-universally applied to all taxpayers, such as the ordinary processing of income tax returns."). And even if it applied here, the Government's conduct in this case plainly satisfied the "nexus" and "foreseeability" requirements set forth by the *Marinello* Court: (1) there was a clear "nexus"—a "relationship in time, causation, or logic"— between Baldeo's admitted use of straw donors and the Government's investigation and prosecution thereof; and (2) so too were those proceedings in the Southern District of New York "reasonably foreseeable" when Baldeo sought to impede them by seeking to prevent potential witnesses from communicating and cooperating with FBI agents from that district. *See id.* at 1109–10; *United States v. Baldeo*, 615 F. App'x 26, 27 (2d Cir. 2015).

The Court therefore denies Baldeo's petition for a writ of error *coram nobis*.

### III. Other Claims

#### A. Habeas Relief

To the extent Baldeo's filings can be construed as seeking relief pursuant to 28 U.S.C. § 2255, his claim must also be denied. As a threshold matter, such relief is "unavailable because petitioner is no longer serving a sentence." *Porcelli v. United States*, 404 F.3d 157, 158 (2d Cir.

2005). And even if it were available, the request would constitute an as-yet unauthorized successive § 2255 motion. *See Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011) ("[A] district court may consider a second or successive § 2255 motion only if the petitioner first obtains an order from the court of appeals authorizing consideration of the successive motion.")

### B. All Writs Act

Similarly, to the extent Baldeo's filings can be construed as seeking *audita querela* relief—or other relief pursuant to the All Writs Act, 28 U.S.C. § 1651(a), separate and apart from his *coram nobis* petition[7]—these claims must also be denied. "The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (cleaned up). "Thus, '[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.'" *Legrano v. United States*, 513 F. App'x 6, 6 (2d Cir. 2013) (summary order) (quoting *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985)). Collateral challenges to criminal convictions are indeed "covered by statute; to wit, 28 U.S.C. § 2255." *James v. United States*, No. 18-CV-10389 (LAP), 2020 WL 3791867, at *3 (S.D.N.Y. July 7, 2020) (quoting *Legrano*, 513 F. App'x at 7)). Threshold requirements constraining, and even foreclosing, relief for successive § 2255 petitions "do not trigger the residual authority of the All Writs Act." *Brown v. United States*, No. 11-CV-3580 (RJD), 2011 WL 4543060, at *1 (E.D.N.Y. Sept. 23, 2011); *see James*, 2020 WL 3791867, at *3 ("This conclusion is not undermined by the fact that any section 2255 motion filed by the petitioner must satisfy the threshold requirements applicable to second or successive section 2255 motions.") (cleaned up).

---

[7] Federal courts' power to grant the "ancient common law writ of error coram nobis" itself derives from the All Writs Act. *Fleming*, 146 F.3d at 89. The Court has already addressed *supra* pp. 5–7 its grounds for denying such relief in this instance.

8

Accordingly, relief under the All Writs Act is "not available" to petitioners such as Baldeo. *See James*, 2020 WL 3791867, at *3.

**C. Rule 60**

Finally, to the extent Baldeo seeks to attack his conviction under Rule 60 of the Federal Rules of Civil Procedure, his attempt fails for two reasons.

*First*, it is untimely. "A motion under Rule 60(b) must be made within a reasonable time . . . ."[8] Fed. R. Civ. P. 60(c). To determine whether a delay is reasonable, courts look to "the particular circumstance of each case and balance the interest in finality with the reasons for delay." *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 190 n.8 (2d Cir. 2006) (internal quotations omitted). A movant's *pro se* status does not absolve them of the reasonableness requirement under Rule 60(c). *See Warren v. Garvin*, No. 97-CV-3243 (RPP), 1999 WL 494117, at *6 (S.D.N.Y. July 13, 1999).

Although a twenty-month lag[9] by no means always constitutes an unreasonable delay under Rule 60(c), it does so in this case—a petition brought by a former attorney who was not incarcerated during the relevant period and who, as is evident from his subsequent filing, is capable of rapid, prolific, and extensive briefing. *See Moses v. United States*, 97-CV-2833 (RPP), 2002 WL 31011864, at *2 (S.D.N.Y. Sept. 9, 2002) (collecting cases where courts found unexcused delays between ten and twenty-one months to be unreasonable). Baldeo's only purported explanation for his delay—which is in fact nothing more than a brief citation to another case—is not persuasive. (*See* Rule 60 Motion at 16–17, CV-ECF No. 41.)

---

[8] Construing Baldeo's *pro se* filings liberally, he invokes both the provisions of Rule 60(b) subject to a one-year limitations period, as well as the portions of Rule 60(b) subject to a "reasonable time" standard. *See* Fed. R. Civ. P. 60(c). His motion is untimely under either standard.

[9] After the Second Circuit's November 21, 2018 denial of a certificate of appeal, Baldeo waited just under twenty months before his first filing in support of the instant petition on July 10, 2020.

9

*Second*, even if it were timely, Baldeo's Rule 60 motion is without merit. "[R]elief under Rule 60(b) is available with respect to a previous habeas proceeding only when the Rule 60(b) motion attacks the integrity of the habeas proceeding and not the underlying criminal conviction." *Harris v. United States*, 367 F.3d 74, 77 (2d Cir. 2004). It "may not be used to challenge a movant's underlying conviction or sentence after that movant's habeas petition attacking the same conviction or sentence on the same basis has been denied." *Chen v. United States*, No. 03-CR-734-4 (DAB), 2016 WL 519617, at *4 (S.D.N.Y. Feb. 3, 2016). Baldeo appears to concede that he is attacking the underlying criminal convention, not the subsequent habeas proceedings, by arguing that the relevant starting point for purposes of calculating timeliness is August 26, 2015, the date the Second Circuit affirmed his conviction (*see* Rule 60 Motion at 4)—nearly two years before he filed his § 2255 petition on March 7, 2017 (*see* CV-ECF No. 1). And indeed, his Rule 60(b) motion focuses on issues relating to the underlying trial, conviction, and sentence, not the subsequent collateral attacks.[10] (*See, e.g.*, Rule 60 Motion at 6–16, 18–21.)

Accordingly, Baldeo's Rule 60 motion is denied.

## IV.   Baldeo's Excessive and Vexatious Filing

Having addressed Baldeo's substantive claims, the Court turns now to the manner in which he has asserted those claims. By the Court's estimates, Baldeo has filed at least 26 bundles of documents in support of the instant petitions and motions, totaling over 600 individual documents and over 9,000 pages (including over 500 pages of briefing alone). The bulk of this onslaught—

---

[10] Baldeo also regurgitates many of the arguments from his earlier *coram nobis* filings that the Court has already dismissed as meritless, lambasting the Department of Justice, bemoaning prosecutorial overreach and discretion, and exploring larger political and social themes. (*See, e.g.*, Rule 60 Motion at 17–18, 21–22.)

at least 19 document bundles, 300 individual documents, and 6,500 pages—was submitted *after* the Court's explicit filing deadlines.

This is, as Baldeo well knows from his time as a practicing attorney, unacceptable conduct from any litigant, *pro se* or otherwise. Although the Court sympathizes with the difficulties Baldeo has faced since his conviction and acknowledges his expression of contrition (*see* Rule 60 Motion at 3, 9), these sentiments can justify neither the relief Baldeo seeks, nor the flatulent manner in which he seeks it. Thus, although the Court declines at this stage to impose monetary sanctions, filing restrictions, or other such measures against Baldeo, it underscores that it has the power to do so should Baldeo's abuse of the judicial process continue. *See, e.g., Shafii v. Brit. Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996) ("A district court may, in its discretion, impose sanctions against litigants who abuse the judicial process."); *United States v. Klein*, No. 03-CR-813 (DLC), 2021 WL 1625320, at *2 (S.D.N.Y. Apr. 27, 2021) ("The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel.") (quoting *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000)). Baldeo has served his sentence. The merits of this case have long since been resolved. There is no need for further litigation.

## CONCLUSION

For the foregoing reasons, Baldeo's various claims for relief are denied. The Clerk of Court is directed to terminate all open motions and petitions[11] across both Baldeo's criminal (13-CR-125) and civil (17-CV-1692) dockets, and to close both cases.

Dated: New York, New York  
January 25, 2021

SO ORDERED

HONORABLE PAUL A. CROTTY  
United States District Judge

---

[11] For administrative ease, the Court documents the relevant filings: CR-ECF Nos. 183, 186, 190, 191, 193, 194, 195, 198, 199, 200, 201, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, and CV-ECF Nos. 32, 35, 36, 41, 42, 43, 44, 45, 48, 49, 50, 51, 52, 53, 54, 55, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 68, 69. The Government filed its opposition at CR-ECF No. 192 / CV-ECF No. 46. Baldeo filed his reply at CR-ECF No. 202 / CV-ECF No. 47.